AO 91 (Rev. 11/11)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Indiana

| | |
|---|---|
| United States of America<br>v.<br><br>George Jones<br><br>Defendant(s) | Case No.<br>1:18-mj-00390 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __6/21/2017 through 10/12/2017__ in the county of __Marion__ in the __Southern__ District of __Indiana__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. § 841(a)(1) | Distribution of a Controlled Substance |
| 18 U.S.C. § 841(a)(1) | Possession of a Controlled Substance with Intent to Distribute |
| 18 U.S.C. § 922(g)(1) | Felon in Possession of a Firearm |

This criminal complaint is based on these facts:

See attached Affidavit.

☑ Continued on the attached sheet.

_____
Complainant's signature

Kerry K. Inglis, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __04/25/2018__

_____
— Judge's signature

City and state: __Indianapolis, Indiana__   Tim A. Baker
*Printed name and title*

## **AFFIDAVIT**

I, Kerry K. Inglis, Special Agent, Federal Bureau of Investigation (FBI), being duly sworn, deposes and states:

1. I have been employed as a Special Agent of the FBI since September 2014, and have been assigned to the Indianapolis Field Office since graduation from the FBI Academy. I am currently assigned to the Indianapolis Metropolitan Safe Streets Gang Task Force. While employed by the FBI, I have investigated various federal criminal violations related to violent crimes, gangs, and criminal enterprises.

2. In connection with my law enforcement duties, I investigate criminal violations of narcotics laws, including but not limited to Title 21, United States Code, Sections 841, 843, 846, and 848; money laundering laws, including Title 18, United Stated Code, Sections 1956 and 1957; and firearm laws, including Title 18, United States Code, Sections 922 and 924. I have received training in the enforcement of laws concerning controlled substances from the Federal Bureau of Investigation. As an FBI Special Agent, I have participated in, and am therefore familiar with the following investigative techniques: consensual and court ordered electronic surveillance; physical surveillance; pole camera surveillance; mail covers; the development and operation of informants; the execution of search warrants; consent searches; Global Positioning Systems; highway drug interdiction; and the debriefing of informants, and others who have knowledge of drug trafficking.

3. As such, I am an "investigative or law enforcement officer" within the meaning of Section 2510(7) of Title 18, United States Code; that is, an officer of the

United States who is empowered by law to conduct investigations of, and to make arrests for offenses enumerated in Title 18, United States Code, Section 2516.

4. I have personally participated in the investigation set forth below. I am familiar with the facts and circumstances of the investigation through my personal participation; from discussions with other agents of the FBI and other law enforcement; from my discussions with witnesses involved in the investigation; and from my review of records and reports relating to the investigation. Unless otherwise noted, wherever in this Affidavit I assert that a statement was made, the information was provided by another Special Agent, Task Force Officer, law enforcement officer, or witness who may have had either direct or hearsay knowledge of that statement and to whom I or other law enforcement officers have spoken or whose reports I have read and reviewed. Such statements are among many statements made by others and are stated in substance and in part unless otherwise indicated. As this Affidavit is being submitted for the limited purpose of securing an Order authorizing the acquisition of the requested information, I have not included details of every aspect of the investigation. Facts not set forth herein, or in the attached exhibits, are not being relied on in reaching my conclusion that the requested Order should be issued, nor do I request that this Court rely on any facts not set forth herein in reviewing this Application.

5. Your Affiant is conducting an investigation regarding George Jones (B/M, DOB XX/XX/1982) ("Jones"). There is probable cause to believe Jones has committed three violations of Title 18, United States Code, Section 841(a)(1) (distribution of a controlled substance, for conduct occurring on June 21, June 27, and July 6, 2017), an additional violation of Title 18, United States Code, Section 841(a)(1) (possession of a

2

controlled substance with intent to distribute, for conduct occurring on October 12, 2017), and a violation of Title 18, United States Code, Section 922(g)(1) (felon in possession of a firearm, for conduct occurring on October 12, 2017). This Affidavit is submitted in support of a criminal complaint and arrest warrant for George Jones.

I. **Controlled Purchases from George Jones**

5. From June 21, 2017 through July 6, 2017, the FBI used a confidential informant ("Individual #1") to execute three controlled purchases[1] of heroin from George Jones.

   A. **Controlled Purchase – June 21, 2017**

6. On June 21, 2017 at approximately 2:11 p.m., Individual #1 placed a consensually recorded phone call to George Jones at phone number (317) 654-2182. Jones answered the phone and they discussed where they were located in order to determine a place to meet. Jones said, "Yeah, just come on up to the uh...just meet me, yea just meet me right here, right at the CVS, at the CVS on Michigan Road, 71st." They further clarified where to meet and Jones asked Individual #1, "So what you want it? So I can have it ready." Individual #1 replied, "A 160 and a 40." Jones responded, "Okay...alright got you." Based on this investigation, this Affiant knows that when Individual #1 asked for "A 160 and a 40" they meant $160 and $40 worth of heroin separated in two pieces.

---

[1] During each of the controlled purchases described in this Affidavit, law enforcement officers searched the informant's person and vehicle before the purchase of heroin or methamphetamine, equipped the informant with an audio recording device, and provided the informant with money to purchase the controlled substances. Additionally, surveillance personnel followed the informant while he/she was in transit to the controlled purchase location, and ensured that the informant did not make any stops before or after each controlled purchase. Following each controlled purchase, law enforcement personnel met with the informant, recovered the recording device and all controlled substances purchased from Jones, de-briefed the informant, and searched his/her person and vehicle.

3

7. At approximately 2:28 p.m., Individual #1 placed a consensually recorded phone call to George Jones at phone number (317) 654-2182. During the conversation, Jones asked Individual #1 where he/she was located and then said, "Yeah you'll be here in a couple minutes then." Individual #1 replied, "Yea, just a couple minutes." Jones told Individual #1, "Alright I'm right here." Individual #1 asked, "Okay still at the CVS?" Jones replied, "Yeah...Alright, hey just pull on the side. You hear me? Pull on the side of the CVS, yeah."

8. At approximately 2:32 p.m., surveillance personnel observed Individual #1's vehicle pull into the parking lot at the back of the Church's Chicken at 2910 W. 71st Street, and meet with a light green Honda Accord. The Church's Chicken is located just southwest of the CVS. At approximately 2:34 p.m., the green Honda Accord departed the parking lot and drove westbound on 71st Street.

9. At approximately 2:37 p.m., surveillance personnel observed the green Honda Accord driving west on 62nd Street approaching Guion Road. The vehicle had dark tint and something hanging from the bottom of the vehicle. The Indiana license plate on the Honda Accord was identified as 697LDD. The vehicle was registered to Kimberly Bedford at 1323 Old Town North Drive. Surveillance personnel observed two B/Ms in the vehicle and the passenger had dreadlocks.

10. Following the meeting with the green Honda Accord, this Affiant and TFO Robert Baker met with Individual #1. Individual #1 provided TFO Baker with a piece of foil containing 1.15 and 0.27 grams of heroin. Individual #1 indicated he/she paid Jones $200 for approximately a gram and a half of heroin. The referenced amounts

were tested and weighed by the Indianapolis-Marion County Forensic Services Agency and documented in an official report.

### B.   Controlled Purchase – June 27, 2017

11.   On June 27, 2017, at approximately 12:47 p.m., Individual #1 placed a consensually recorded phone call to George Jones at phone number (317) 654-2182. During the conversation, Jones told Individual #1 to come up north and asked, "What you want it?" Individual #1 replied, "I need a 160 and then a 40." Jones explained that he lost all of his phone numbers, but then assured Individual #1, "Alright I got you."

12.   At approximately 1:24 p.m., Individual #1 placed a consensually recorded phone call to George Jones at phone number (317) 654-2182 to tell him that he/she would be there in five to seven minutes. Jones replied, "Alright you said a, you said 160 and a 40 right?" Individual #1 replied, "Yep, correct."

13.   At approximately 1:30 p.m., surveillance personnel observed Individual #1's vehicle park in front of 1323 Old Town North Drive. At approximately 1:31 p.m., Individual #1 placed a consensually recorded phone call to George Jones at phone number (317) 654-2182. Individual #1 told Jones, "Hey I just pulled up." Jones replied, "Alright I'm 'bout to come out right now." At approximately 1:40 p.m., surveillance personnel observed George Jones wearing a red sweatshirt, red hat, and red and white shoes standing on the passenger side of Individual #1's vehicle. Approximately one minute later, Individual #1 departed.

14.   Following the meeting with Jones at his apartment complex, this Affiant and TFO Robert Baker met with Individual #1. Individual #1 provided TFO Baker with a piece of foil containing 0.89 and 0.07 grams of heroin. Individual #1 indicated he/she

5

paid Jones $200 for approximately a gram and a half of heroin. The referenced amounts were tested and weighed by the Indianapolis-Marion County Forensic Services Agency and documented in an official report.

### C. Controlled Purchase – July 7, 2017

15. On July 6, 2017, at approximately 12:43 p.m., Individual #1 placed a consensually recorded phone call to George Jones at phone number (317) 654-2182. During the conversation, Individual #1 asked Jones, "Are you good?" Jones replied, "Yeah," then they discussed where to meet. Jones told Individual #1, "You can meet me at the top of the hill....What you want it?" Individual #1 replied, "160 and 40." Jones asked, "160 and 40?...Okay, I got you."

16. At approximately 1:23 p.m., Individual #1 placed a consensually recorded phone call to George Jones at phone number (317) 654-2182. Individual #1 told Jones that he/she ran into some traffic and would be there in five to ten minutes.

17. At approximately 1:32 p.m., Individual #1 placed a consensually recorded phone call to George Jones at phone number (317) 654-2182. Jones told Individual #1, "I see you over at the Dairy Queen, I ain't comin over there. That lady will call the police, that white lady in there." Individual #1 asked, "So where do you want me to come over there?" Jones replied, "Yeah, come over here, cause that lady will call the cops. I'm tellin ya." Shortly after the call, Individual #1 drove over to the Sunoco gas station located at 3754 Dr. Martin Luther King Jr. Street, Indianapolis, Indiana. Surveillance personnel observed a green Honda Accord pull into the gas station parking lot.

18. At approximately 1:36 p.m., surveillance personnel observed Individual #1 pull up next to the green Honda Accord, then Individual #1 exited his/her vehicle and

entered the passenger seat of the green Honda Accord. Approximately one minute later, surveillance personnel observed both vehicles exit the gas station parking lot.

19. Following the meeting with Jones at the gas station, this Affiant and TFO Robert Baker met with Individual #1. Individual #1 provided TFO Baker with a piece of foil containing 1.13 and 0.26 grams of heroin. Individual #1 indicated he/she paid Jones $200 for approximately a gram and a half of heroin. The referenced amounts were tested and weighed by the Indianapolis-Marion County Forensic Services Agency and documented in an official report.

**II.     Arrest of George Jones – October 12, 2017**

20. On October 12, 2017, Indianapolis Metropolitan Police Detective Craig McElfresh was assisting the Drug Enforcement Agency (DEA) with an investigation on George Jones based on information that he was selling narcotics from 1323 Old Town North Drive. The investigation led IMPD to discover that Jones had a felony warrant for his arrest. IMPD Detective McElfresh and other law enforcement officers began surveillance of 1323 Old Town North Drive at approximately 7:00 a.m. on October 12, 2017.

21. At approximately 11:20 a.m., surveillance personnel observed Jones exit 1323 Old Town North Drive and enter the driver's side of a blue Honda Accord. Agents and officers moved in to apprehend Jones, and DEA Special Agent Dan Schmidt observed Jones immediately use his hands to stuff something under his driver's side seat. Jones eventually complied with Officers' commands and brought his hands up from under the driver's side seat, then exited the vehicle. Jones was placed in custody without incident.

22. As Detective McElfresh approached the blue Honda Accord, he looked through the open driver's side door and saw suspected narcotics along the driver's side floorboard. Detective McElfresh looked under the driver's seat of the Accord and could see an additional clear plastic baggie of suspected narcotics. Additionally, Detective McElfresh noticed in plain view of the driver's armrest a clear plastic baggie of suspected narcotics, and a pill bottle with several thin white pills in the map pocket of the driver's side door.

23. Detectives searched Jones' person incident to arrest and located a clear plastic baggie of suspected narcotics in Jones' left jacket pocket, as well as $3,343 in U.S. currency in both of Jones' back pants pockets. Detective Marc Campbell read Jones his *Miranda* rights at approximately 11:30 a.m., which was witnessed by DEA Special Agent Phil McCormick.

24. Jones' live-in girlfriend, Kimberly Bedford, arrived at 1323 Old Town North Drive at approximately 12:00 p.m. Detective McEflresh advised Ms. Bedford of her Miranda rights, then Ms. Bedford stated she lived at 1323 Old Town North Drive with Jones. She also stated that she owned the Honda Accord and the burgundy Jaguar parked in the lot across from their apartment, but that Jones frequently drove both vehicles. Ms. Bedford signed a form and consented to a search of the Jaguar and their apartment.

25. During a search of the Jaguar, Detective McElfresh located a clear plastic baggie of suspected narcotics in the center console. When the search of 1323 Old Town North Drive began, Jones informed Detective Campbell that there was a handgun in the residence. Detective Campbell asked Jones if he knew he was not allowed to possess a

firearm as a convicted felon. Jones stated that he knew he was not allowed to possess a firearm, but that he needed one for protection. Jones said the handgun was located under the couch in the living room in a locked gun box. Jones further advised Detective Campbell that the key to the gun box was located under the rug in the living room. Detective Campbell located the gun box and the key was where Jones stated it would be.

26. The suspected narcotics were submitted to the Indianapolis-Marion County Forensic Services Agency. On October 16, 2017, the lab results were reported as: 7.20 grams of heroin found under the driver's seat of the Honda Accord; 0.97 a gram of Fentanyl found in the armrest of the Honda Accord; fifty tablets of Alprazolam (only one pill was tested since they were visually similar); 4.95 grams of heroin found in Jones' left jacket pocket; and 0.29 a gram of cocaine found in the center console of the Jaguar.

27. A criminal history check for George Jones indicated he has sustained the following felony convictions in Marion County (Indiana): (1) Invasion of Privacy (three counts), Class D Felonies, June 24, 2016; (2) Battery Resulting in Serious Bodily Injury, Class C Felony, October 18, 2013; (3) Possession of a Controlled Substance, Class D Felony, charging date October 14, 2006; (4) Dealing in a Narcotic Drug, Class A Felony, April 16, 2009; (5) Resisting Law Enforcement, Class D Felony, May 1, 2001; (6)

Conspiracy to Deal in a Narcotic Drug, Class A Felony, May 1, 2001.

_____
Kerry K. Inglis, Special Agent
Federal Bureau of Investigation

Sworn to before me this 25th day of April, 2018.

_____
TIM A. BAKER
United States Magistrate Judge
Southern District of Indiana